[No. 14648.  Department One.  March 7, 1918.]

## GRANT FOSTER, *Appellant*, v. COMMISSIONERS OF COWLITZ COUNTY et al., *Respondents.*[1]

COUNTIES—LOANING CREDIT—ASSOCIATION, COMPANY OR CORPORATION.  A diking district organized under Laws 1917, pp. 522-545, is not an "association, company or corporation" within Const., art. 8, § 7, forbidding a county to loan money or credit thereto; and hence that act requiring county commissioners to exercise certain powers and perform certain duties with reference to diking districts does not violate such constitutional provision.

CONSTITUTIONAL LAW—DELEGATION OF POWER—SPECIAL ASSESSMENTS.  Const., art. 7, § 9, vesting cities, towns and villages with the power to make local improvements by special assessments upon property benefited is not prohibitory and does not prohibit the legislature from conferring the power on diking districts by Laws 1917, pp. 522-545, providing that the costs of the improvement be paid by special assessments upon the property benefited. .

COURTS—STARE DECISIS—RULE OF PROPERTY.  An early decision upon the faith of which a large amount of indebtedness of diking and drainage districts has been incurred becomes a rule of property upon which the doctrine of *stare decisis* is of controlling force.

CONSTITUTIONAL LAW—DUE PROCESS—TAKING PROPERTY—NOTICE.  The diking district law of 1917, pp. 522-545, does not violate the due process of law guaranties of the state and Federal constitutions, inasmuch as property cannot be taken or damaged without compensation, nor without notice and opportunity to be heard, with right of jury trial.

LEVEES—STATUTES—CERTAINTY.  The diking district law of 1917, pp. 522-545, is not indefinite and uncertain in failing to provide in terms for the making of a final order establishing the district, inasmuch as the district is established not later than when the county commissioners decide, after a hearing, upon the nature and extent of the proposed improvement.

LEVEES—DISTRICT—ESTABLISHMENT—NOTICE.  Section 20, of the diking law of 1917, pp. 522-545, authorizing changes by the county commissioners, in the estimated damages and benefits made by the engineer, after a hearing upon objections, does not authorize changes in the boundaries or plans so as to require a new notice to the owners.

[1]Reported in 171 Pac. 539.

Appeal from a judgment of the superior court for Cowlitz county, Darch, J., entered December 10, 1917, dismissing an action for an injunction, after a trial before the court upon an agreed statement of facts. Affirmed.

*Homer Kirby,* for appellant.

*A. H. Imus,* for respondents.

PARKER, J.—The plaintiff, Foster, commenced this action in the superior court for Cowlitz county, seeking an injunction to restrain the officers of that county from taking further steps towards the incurring of indebtedness looking to the construction of the diking improvement proposed to be constructed in diking improvement district No. 4 of that county at the expense of the property therein situated. The case being heard and submitted to the superior court upon the merits, judgment was rendered therein denying the relief prayed for by the plaintiff, from which he has appealed to this court.

The contentions made in appellant's behalf seem to render it necessary to here notice at considerable length the terms of the statute under which the county officers are proceeding. For present purposes they may be summarized from chapter 130, Laws of 1917, pp. 522-545, as follows:

Section 14 provides that proceedings looking to the creation of a diking improvement district and the construction of a diking improvement therein may be initiated by petition of the owners of property which will be benefited thereby, filed with the clerk of the board of county commissioners.

Section 15 reads:

"Upon the filing of the petition and the approval of the bond, the clerk of the board shall deliver a copy of

said petition to the county engineer, who shall at once proceed to view the line and location of the proposed improvement and the property to be affected thereby, and determine whether the improvement is in his opinion necessary or will be conducive to public health, convenience or welfare and whether in his opinion the location and route described are the best for the proposed improvement, what, if any, part of the proposed system of improvement mentioned in the petition should in his judgment be omitted, and what, if any, additions should be added thereto or changes made therein, and shall report to and file his findings in writing with the board of county commissioners."

Section 16 reads in part:

"If the report of the county engineer shall be in favor of said improvement, the board of county commissioners shall give the improvement district a number, . . . and thereafter such district shall be designated as Drainage (or Diking) Improvement District Number . . . of . . . county, and the board shall cause to be entered on its journal an order directing the county engineer to go upon the lines described in the petition, or as changed by him in his report, and survey, and take levels on the same . . . and make a report, profile and plat of the same; also to make an estimate of the cost of construction of such system itemized so as to be reasonably specific as to the various parts thereof: *Provided,* That such estimate of the cost shall be held to be preliminary only and shall not be binding as a limit on the amount that may be expended in constructing such system."

Section 17 reads in part:

"The board shall also by order entered on the journal, direct the county engineer to make and return a schedule and estimate of all property that will be damaged, or both damaged and benefited by the proposed improvement, and to estimate and report the total number of acres that will be benefited by the proposed improvement and to specify the manner in which the proposed improvement is to be made . . . Sched-

ules of property to be damaged or damaged and bene-
fited shall be arranged in parallel columns, with ap-
propriate headings,  .  .  .   the right-hand column
of the schedule shall be sufficiently wide for the sig-
nature of the owner, and shall bear the heading: 'I,
the undersigned owner of the property opposite which
I have signed my name, accept and agree to the esti-
mated amount of benefits and damages that will ac-
crue to my property' by reason of the proposed im-
provement.' "

Section 19 reads in part:

"Upon the filing of the report of the county engi-
neer, the board of county commissioners shall imme-
diately fix a date for a hearing on such report, and the
clerk of the board shall give notice thereof by publica-
tion for at least once a week for three successive weeks,
in the official newspaper of the county,  .  .  ."

Section 20 reads in part:

"On the date set for said hearing the board of coun-
ty commissioners shall meet at the place designated in
the notice, and if it appear that due notice of such hear-
ing has been given, shall proceed with the hearing on
the report of the county engineer, and any objections
thereto, and may adjourn said hearing from time to
time and from place to place.   At said hearing the
board shall hear all pertinent evidence, including any
evidence offered concerning the probable cost of the
system and the probable benefits to accrue therefrom,
and may change, add to or modify the plans for such
system of improvement and the boundaries of the im-
provement district, and change the estimate of dam-
ages and benefits in any case, and may review, change
and modify any of the findings and estimates of the
county engineer, and may, in its discretion, employ an-
other engineer to make separate findings on any or all
of the matters hereinbefore required to be included in
the report of the county engineer, and may adjourn
said hearing and await such report; or may discontinue
proceedings in regard to the proposed improvement,
at the cost of the petitioners therefor, if the board

shall determine that the construction of the proposed improvement is not warranted by the benefits to be derived therefrom. In case the board shall determine to enlarge the boundaries of the district, a date shall be fixed for a new hearing and notice therefor shall be given and such hearing shall be held as provided for the hearing on the report of the county engineer. In case any change in the plans of the proposed improvement is made, at said hearing, and such change will cause additional damage to any property, or will damage any property not damaged under the original plans, the county engineer shall prepare and file a schedule, showing the estimated damages and benefits under such changed plans, and notice of the filing of such schedule shall be served upon the owners of the properties affected, and settlements made as hereinafter provided.''

Section 21 confers upon counties the power of eminent domain to be exercised in behalf of the proposed improvement district for acquiring the necessary rights of way and the right to damage property necessary to the construction of the improvement. This power would, of course, need to be exercised only as against those owners who do not sign the waiver specified in § 17 above noticed. Section 22 reads in part:

''When the board of county commissioners shall have finally determined and fixed the route and plans for the proposed system of improvement and the boundaries of the improvement district, and when it shall appear that the damages for property to be taken or damaged have been settled in the manner hereinabove provided, . . . thereupon such system of improvement . . . shall be constructed in the manner hereinafter provided.''

Section 23 provides that the cost of the improvement shall be paid by assessment upon the property benefited thereby, that the payment of the assessments may be made in annual installments, and for the is-

suance of warrants or bonds evidencing the indebtedness to be so paid.

Sections 25 and 26 provide that, "upon the determination by the board of county commissioners to proceed with the work," they shall call an election, at which all electors of the state owning land in the district may vote, to choose two electors of the county owning land in the district, who, with the county engineer, shall constitute the first board of supervisors of the district, and shall have charge of the construction and maintenance of the improvement; and also prescribes the terms of office of the elected supervisors and of the election of their successors.

Section 30 reads in part:

"When the improvement is fully completed and accepted by the county engineer, the clerk of the board shall compile and file with the board of county commissioners an itemized statement of the total cost of construction, including engineering and election expenses, the cost of publishing and posting notices, damages and costs allowed or awarded for property taken or damaged, including compensation of attorneys, [here follows other items]. Upon the filing of such statement of costs and expenses the board of county commissioners shall revise and correct the same if necessary . . . and unless the same have been previously appointed, shall appoint a board of appraisers consisting of the county engineer and two other competent persons, to apportion the grand total as contained in said statement as hereinafter provided. . . . and said board of appraisers shall proceed to carefully examine the system and the public and private property within the district and fairly, justly and equitably apportion the grand total cost of the improvement against the property . . . within the district, in proportion to the benefits accruing thereto."

Section 32 provides that, upon the filing with the county commissioners of a report of the apportion-

ment, which is in effect an assessment roll, made by the appraisers, they shall fix a time for a hearing thereon, notice of which hearing is to be given by publication.

"At such hearing, which may be adjourned from time to time and from place to place, until finally completed, the board of county commissioners shall carefully examine and consider said schedule and any objections filed or made thereto and shall correct, revise, raise, lower, change or modify such schedule or any part thereof, or strike therefrom any property not benefited, or set aside such schedule and order that such apportionment be made *de novo*, as to such body shall appear equitable and just. . . . When the board of county commissioners shall have finally determined that the apportionment as filed or as changed and modified by the board is a fair, just and equitable apportionment, and that the proper credits have been entered thereon, the members of the board approving the same shall sign the schedule and cause the clerk of the board to attest their signature under his seal, and shall enter an order on the journal approving the final apportionment and all proceedings leading thereto and in connection therewith, and shall levy the amounts so apportioned against the property benefited, and the determination by the board of county commissioners in fixing and approving such apportionment and making such levy shall be final and conclusive."

Section 33 provides for the collection and foreclosure of the assessment in the same manner as for general taxes.

It is first contended in appellant's behalf that the law under which the county officers are proceeding is in violation of art. 8, § 7, of our constitution, which reads in part:

"No county, city, town, or other municipal corporation shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association, company, or corporation, . . ."

Counsel proceed upon the theory that the county is giving services, and therefore, in effect, giving "money or property" in aid of the improvement district, in that the county officers, as the law provides, render a considerable service in the organization of the district, the construction of the improvement, and in the administration of the affairs of the district after its organization, without compensation to the county. We assume, for argument's sake only, that this would be in violation of art. 8, § 7, of our constitution, if a diking improvement district such as is contemplated by this law is an "association, company, or corporation" of the kind this constitutional prohibition contemplates that the county shall not aid. In *Rands v. Clarke County,* 79 Wash. 152, 139 Pac. 1090, we held that, by this constitutional provision, counties were only prohibited from aiding

"Individuals, associations, companies and corporations engaged in purely private enterprises, or enterprises only quasi public, not to enterprises carried on by the corporations whose functions are wholly public, such as the Federal or state government, or some branch thereof."

Is the organization of a diking district and the construction and maintenance of a diking improvement under this law the exercise of a public function? If so, it would seem to plainly follow that the county is not lending aid to the district in violation of the constitutional prohibition invoked. In *Pierce County v. Thompson,* 82 Wash. 440, 144 Pac. 704, considering the prior diking statute, of which this statute is amendatory but without material change as to the nature of the improvement in so far as its public character is concerned, we held that the improvement was a public improvement in the sense that a city local improvement constructed and paid for by special assess-

ment against property benefited thereby is a public improvement. It seems too plain to admit of argument to the contrary that there is no valid constitutional objection to a city or county aiding in the construction of such an improvement to any extent it may by statute be authorized so to do. Recurring to § 15 of the law above quoted, we find that, whether or not the improvement "will be conducive to public health, convenience and welfare" is to be considered in determining the question of creating the district and constructing the improvement. We conclude that the statute in no way violates the provisions of art. 8, § 7, of our constitution.

It is next contended that the statute in question violates the provisions of art. 7, § 9, of our constitution, which reads:

"The legislature may vest the corporate authorities of cities, towns, and villages with power to make local improvements by special assessment, or by special taxation of property benefited. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same."

It is argued that this constitutes an implied prohibition against the making of local improvements by special assessment, except as such power may by the legislature be conferred upon the corporate authorities of "cities, towns, and villages." In other words, that no other public authorities can be constitutionally granted such power.

The early decision of this court in *Hansen v. Hammer*, 15 Wash. 315, 46 Pac. 332, holds to the contrary of this contention. Therein was considered a special assessment charged against property benefited by a diking improvement, under the diking district statute

of 1895 then in force, which assessment was levied, as
that law provided, by authorities other than those of
"cities, towns and villages." Following the holding
of the supreme court of Nebraska in *State v. Dodge
County*, 8 Neb. 124, 30 Am. Rep. 819, Judge Scott,
speaking for this court, at p. 318, said:

"While the effect of holding that it [§ 9, Art. 7,
Const.] is not a prohibition may be to give little or no
effect to the first clause in the provision, and while
the general rule is, that a constitution should be in-
terpreted, if possible, to give effect to all parts of it,
yet considering the fact that this provision in our con-
stitution is more like the one in the Nebraska consti-
tution than any other to which our attention has been
called, and that, at the time our constitution was
adopted, the supreme court of Nebraska had construed
the same in the case cited, and furthermore in view of
the possible effect upon prior legislation and con-
structed improvements above mentioned, we are some-
what compelled to the conclusion that it should not at
this time be held to be a prohibition, . . ."

That holding has become in effect a rule of prop-
erty, upon the faith of which a large amount of in-
debtedness has been incurred in the construction of
both diking and drainage improvements under our
diking and drainage district statutes, the payment of
which indebtedness depends upon the power to levy
and enforce special assessments of the nature here in-
volved. Manifestly, therefore, the doctrine of *stare
decisis* should be of controlling force in the deciding
of this and other like cases. We conclude that we must
now hold that this statute does not violate the pro-
visions of art. 7, § 9, of our constitution.

Upon the question of the constitutionality of the
statute, counsel for appellant finally contends that it
violates the due process of law guaranties of both our
state and Federal constitutions. In so far as the

taking and damaging of property incident to the construction of the improvement is concerned, it seems plain to us that there is scarcely room for argument in support of this contention, since, as we have seen, the improvement is public in its nature, and, under this law, no one's property can be taken or damaged against his will, except by condemnation proceeding in which he is furnished opportunity to be heard in court both as to the necessity for the taking or damaging of his property and as to the amount which he is entitled to be awarded therefor. As to the latter, he is accorded the right of trial by jury. It is not suggested that there is, in the prescribed condemnation proceeding, any want of fair notice to the property owner to be heard, nor that he is not accorded such a trial as amounts to due process by the terms of the statute.

In so far as the question of due process in the charging of the cost of the improvement to the property benefited thereby is concerned, counsel's contention is also untenable. Owners of property within the district are given notice and opportunity to be heard upon the question of the creation of the district and the construction of the improvement. When it comes to charging the cost of the improvement against the several tracts of land within the district, such charge must be "in proportion to the benefits accruing thereto," and we think the statute also means that no tract of land can be charged in excess of the benefits accruing thereto. Owners of land within the district to be charged with any portion of the cost of the improvement are given notice and opportunity to be heard upon the question of benefits and the apportionment of the charge to be made therefor against the several tracts. Not until all this is done is the assessment finally levied. And even after the assessment is levied, it cannot be enforced against any of the property ex-

cept by foreclosure in court, as the liens of general taxes are foreclosed under our general tax laws.

In *State ex rel. Latimer v. Henry,* 28 Wash. 38, 68 Pac. 368, there is quoted with approval from *Fallbrook Irrigation District v. Bradley,* 164 U. S. 112, the following:

" 'Whenever by the laws of the state or by state authority a tax, assessment, servitude or other burden is imposed upon property for the public use, whether it be for the whole state or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed in the ordinary courts of justice, with such notice to the person or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, . . .' " (*Davidson v. New Orleans,* 96 U. S. 97).

It seems quite clear to us that this statute is not in violation of the due process of law guaranties of either our state or Federal constitution.

It is contended in appellant's behalf that this law "is indefinite, uncertain, and void for want of form." The argument seems to be that, because the statute does not in terms provide for the making and recording of a final order or determination in form establishing the district, the district never comes into being. There may be room for argument as to just when during the course of the proceedings the district becomes established, but we think it becomes established in any event not later than when the county commissioners decide upon the nature and extent of the proposed improvement following the hearing provided for, touching that question, in § 20 of the law above quoted. This, we think, forms a sufficient foundation to support all subsequent proceedings in the construction

and maintenance of the improvement, in so far as the creation of the district and deciding upon the construction of the improvement is concerned.

It is finally contended in appellant's behalf that, at the hearing provided for in § 20 of the law, the county commissioners made such changes in the report of the engineer that a new notice to the property owners of hearing thereon was necessary to enable the commissioners to lawfully make such changes. These changes had reference only to the estimated damages and benefits made by the engineer accruing to certain lands within the district, and were made upon hearing the objections of the owner thereof to the engineer's estimates. No changes were made by the county commissioners in the "boundaries of the district" nor in the "plans of the proposed improvement" which are the only changes requiring a new notice and a new hearing under § 20. We think the changes made by the county commissioners were not such as to require further notice.

The judgment is affirmed.

ELLIS, C. J., FULLERTON, MAIN, and WEBSTER, JJ., concur.