[No. 14540.    *En Banc.*    September 16, 1918.]

OREGON-WASHINGTON RAILROAD & NAVIGATION COMPANY, *Appellant,* v. BOARD OF COMMISSIONERS OF YAKIMA COUNTY *et al., Respondents.*[1]

CONSTITUTIONAL LAW—DUE PROCESS—SPECIAL ASSESSMENTS—REVIEW BY COURTS—NECESSITY. The drainage district law, Rem. Code, §§ 4226-1 to 4226-41, does not violate the due process clauses of the state and Federal constitutions, in that it provides for special assessment without the medium of any review by the courts; due process being afforded when there is opportunity to be heard before the body which is to make the assessment.

DRAINS — ASSESSMENT — BENEFITS. An assessment for a drain against railroad right of way cannot be sustained in a sum greater than that upon other property on the theory that, by drying up the country and protecting it from floods, it makes the roads in the vicinity more accessible and adds to the business of the railroad; since that is a general and not a special benefit, and a greater burden on one property than upon others requires some different or special benefit to such property.

SAME—ASSESSMENT—BENEFITS. An arbitrary drainage assessment of a railroad right of way in a disproportionate sum cannot be sustained because the property was benefited to the extent of the assessment, which was to be apportioned ratably and equitably.

FULLERTON, J., dissents.

[1]Reported in 175 Pac. 37.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered February 16, 1917, dismissing an action to restrain the collection of an assessment, after a trial on the merits. Reversed.

*A. C. Spencer, Richards & Fontaine,* and *Hamblen & Gilbert,* for appellant.

*W. B. Bridgman,* for respondents.

CHADWICK, J.—In the year 1915, the county commissioners of Yakima county, pursuant to the provisions of the statute of 1913 (Laws of 1913, p. 611, ch. 176; Rem. Code, §§ 4226-1 to 4226-41), established a drainage district in that county, known as subdistrict No. 4 of drainage improvement district No. 3. The subdistrict comprised approximately 8,000 acres, and included a portion of the right of way and the improvements thereon of the appellant railway company. The right of way so included is some four miles in length and amounts in area to 53.1 acres. The district was organized for the purpose of constructing on the assessment plan a drainage ditch and certain laterals, made necessary to take care of the seepage waters escaping from agricultural lands irrigated from the Sunnyside canal and the drainage from a hilly area lying north of the district. The ditch as constructed cost $15,-415.97. Of this sum, $490.35 was assessed upon the appellant's right of way as property benefited by the improvement. On the return of the assessment roll to the county commissioners, the appellant appeared before that body and protested against the assessment on the ground that it was unjust, arbitrary, made upon a fundamentally wrong basis, and constituted a taking of its property without due process of law. The commissioners overruled the objections and confirmed the

16—103 WASH.

assessment, whereupon the appellants brought the present action to restrain the collection of the assessment and to remove the apparent lien thereof as a cloud upon its title. It admitted, however, that the land occupied by its right of way might be justly assessed for the sum of $112.92, which sum it tendered and paid into court for the use of the district. The trial court, after a trial upon the merits, found the assessment just and valid and dismissed the action. From the judgment of dismissal, this appeal is prosecuted.

Of the assignments of error, the first to be noticed is that the statute under which the proceedings were had violates the due process of law clauses of both the state and Federal constitutions. The contention is founded on the fact that the statute makes no provision for reviewing the legality and justness of the assessment in the ordinary courts of law. But it is not essential to the validity of an act authorizing a special assessment for benefits under this clause of either the state or Federal constitution that the act provide for an assessment through the medium of the courts, or for a review by the courts of such a proceeding when made by another body. This we held in *Bowes v. Aberdeen,* 58 Wash. 535, 109 Pac. 369, 30 L. R. A. (N. S.) 709. In that case we said:

"Nor do we believe that appellants are in any way deprived of their property without due process of law, within the rule of *Davidson v. New Orleans,* 96 U. S. 97, and *Hagar v. Reclamation District,* 111 U. S. 701. If it be conceded that the legislative department has not the right to arbitrarily fix the amount of the tax, the act of 1909 is within that line of cases holding that, if the citizen be given an opportunity to be heard, either before the assessing body or in the courts, then the levy of such special assessments will not operate as a deprivation of rights of property without due

process of law. The act in question provides for a hearing upon the assessments levied, and that at such time the board may hear, consider and determine objections and protests, and make 'such alterations and modifications in the assessment roll as justice and equity may require.' "

The constitutionality of this very act was also before us in the recent case of *Foster v. County Comrs. of Cowlitz County*, 100 Wash. 502, 171 Pac. 539. While the precise point here urged seems not to have been raised or discussed, the sole question urged was the unconstitutionality of the act, and we upheld it, sustaining an assessment made thereunder.

That such an act is not violative of the Federal constitution for the reason urged was held by the supreme court of the United States in *Hibben v. Smith*, 191 U. S. 310. In that case Mr. Justice Peckham, speaking for the court upon the question, used this language:

"The claim set up on the part of the lot owner, that there can be no due process of law under which an assessment can be made which does not provide for a review of such assessment and a hearing by a court, is not tenable. Assuming the necessity of a hearing before an assessment can be made conclusive, the law may provide for that hearing by the body which levies the assessment, and after such hearing may make the decision of that body conclusive. Although in imposing such assessments the common council or board of trustees may be acting somewhat in a judicial character, yet the foundation of the right to assess exists in the taxing power, and it is not necessary that in imposing an assessment there shall be a hearing before a court provided by the law in order to give validity to such assessment. Due process of law is afforded where there is opportunity to be heard before the body which is to make the assessment, and the legislature of a state may provide that such hearing shall be con-

clusive so far as the Federal constitution is concerned.''

The further contention is that the assessment was unjust and arbitrary and made upon a fundamentally wrong basis. Figured as acreage the assessment of appellant's right of way is about five times greater than the assessment of adjoining property. It is admitted that the land of the railroad company is the same as other land in the community, and that the commissioners had a very definite idea that out of the whole cost of the improvement appellant should pay about the sum of $500. The assessment is justified by counsel although it is questionable whether the commissioners had all that is now advanced in mind, for they frankly admit that, before proceeding to the levy, an arbitrary sum was agreed upon to be assessed against the appellant. But if an assessment can be sustained in reason, we take it that it will not be rejected for this account. It is now said that the commissioners found that the drainage tended to lower the general water level in the drainage district and in the vicinity of appellant's road, thus contributing to the solidity and safety of the roadbed and the effective life of the ties, thus lessening the cost of maintenance; that it protected the road in a material degree from damage by floods and high water which were likely to occur; that it dried up and made passable the county roads in the vicinity of appellant's line, thus making it more accessible to the patrons of its road; and that it reclaimed much agricultural land in the vicinity of the road which but for the drainage would have remained fallow, thus contributing to the benefit of the road by an increase of its business.

But these reasons are not enough to sustain an assessment of the property of the appellant over that of

other lands and other business within the limits of the
district. While we recognize that some property may
be benefited to a greater extent than other property,
the benefit must be sustained upon reasonable grounds.
Some of the reasons urged for sustaining the greater
assessment of appellant's property may be called spe-
cial benefits, while others are as clearly general bene-
fits. One of the things urged as a special benefit is
that the drainage will contribute to the solidity and
safety of the road and add to the life of the ties and
lessen the cost of maintenance; but if the commission
has acted upon that assumption it is hardly borne out
by the record, for the road is upon a grade elevated
above the surface of the surrounding country, has been
in no way impaired by existing conditions, and the
greater preponderance of the testimony is that there
has been no extra expense of maintenance by reason
of the need of drainage to the adjacent agricultural
lands which have been alkalied by reason of the rais-
ing of the water table in that vicinity. In the light of
the testimony, this condition ceases to be a reason and
becomes only an unsustained theory. That the drain-
age would protect the road in a material degree from
damage by floods and high water is called a special
benefit, but this a benefit common to all the property
in the district. We may grant that an assessment
should be sustained upon this benefit, but it does not
follow that it should be laid with heavier hand upon
appellant's property than upon other property.

The other reason urged, that the drainage will dry
up and make the country roads in the vicinity more ac-
cessible so that the patrons of appellant's road may
more conveniently patronize it, is a general and not a
special benefit, for, if the drainage will make the roads
more accessible so that business will follow, it will
make the roads more available to the patrons of the

road and make it possible for them to haul their products more cheaply and conveniently than they would be able to do if the work were left undone. To adopt the theory that the reclamation of land which had been rendered useless by the elevation of the water table would increase the business of appellant would be to ignore entirely the fact that the very same benefit would come to the adjoining lands, for if the country in its present condition does not furnish traffic for the road and will with the drainage afford traffic, how can it be said that this item is special to the appellant when the thing that is done to make that traffic is of the same benefit to the landowner. Without it the land owner can raise no crops, his land is valueless, and with it, under this assessment by the expenditure of less than $2 an acre, his land is made productive and of great value. As the road would get more tonnage by reason of the improvement, the landowner would get more yield per acre. If the appellant will draw two tons of freight from the adjoining land where it drew none before, so will the landowner raise two blades of grass where he raised none before. Their situation is identically the same, the return of one being in crops, and the other in freight for moving the crops. When the day's work of each of them is done and they meet to deposit their money they are upon exactly the same footing. They are both engaged in a business enterprise, and there is no statute that gives one an advantage over the other because of his calling. We think, therefore, that the only special benefits are as noted, and that they are the same in kind as the special benefits occurring to other property.

Respondent relies upon *In re Westlake Avenue,* 40 Wash. 144, 82 Pac. 279, and *Vancouver v. Corporation of the Catholic Bishop of Nisqually,* 90 Wash. 319, 156 Pac. 383, and other cases, but the difficulty in applying

them is that the argument is as applicable under the facts of this case to the situation of the adjoining lands as it is to the situation of appellant's right of way.

It cannot be denied that there is a benefit to all of the property that will sustain an assessment, but, if the district would put a greater burden upon one property over another, it must disclose some benefit different in character and special to the property which is made subject to the greater burden.

The contention of counsel is fairly met in *In re Harvard Avenue North,* 47 Wash. 535, 92 Pac. 410, where it is suggested that a convenience or benefit to a street railway company by the improvement of a street may nevertheless be considered as an element of special benefit to the neighboring property. Or to put it in another way, where the benefit is like in kind and mutual, the charge should be about the same to each owner.

The case of *Chicago, R. I. & P. R. Co. v. Wright County Drainage District,* 175 Iowa 417, 154 N. W. 888, if casually read would seem to sustain the judgment. But in that case, aside from contending that there was no benefit at all, a contention which is not available to appellant under its tender, the company maintained that the assessment was disproportionate when figured on an acreage basis. The court rightly held upon the case before it that the assessment need not necessarily be laid upon an acreage basis, and upon the facts, that the company had received a special benefit in the very things that respondent here asserts. We may confidently assume that the testimony was sufficient to sustain the finding. We hold, as was there held, that the burden is on the appellant to show a want of special benefit, but this burden was assumed and the testimony clearly preponderates, if, indeed, it can be said that there is any evidence to the contrary, that there will

not be a greater convenience or economy of maintenance, or that the life of the ties will be lengthened, or that there will be greater solidity or safety to the road. Commissioners are free to take all such things into consideration if they be proven or are evident facts, but they are not privileged to sustain the levy of an arbitrary amount because in some cases they may occur.

Counsel seems to argue that appellant should not complain for, under the testimony, it is clear that it is benefited to the extent of the assessment, but this is unsound. It may be granted that it is so, or that it may be benefited to an even greater sum, but assessments are not to be disproportionately laid, for the law will not tolerate the thought that the whole or even an unequal proportion of an assessment shall be laid against particular property because it may be benefited to the extent of the assessment. The cost is to be apportioned ratably and equitably between the landowners, and before an assessment can be sustained upon a particular piece of land the burden is upon the courts, when called upon to review it, to inquire whether other lands have been assessed in like proportion for the same benefit.

We are convinced that the assessment was made upon a fundamentally wrong basis, that it is disproportionate to the assessment laid upon other property in the district, and that it cannot be sustained. We understand that the district is not without remedy by reassessment.

Reversed, and remanded with directions to enter a judgment in favor of appellant.

MAIN, C. J., MOUNT, MITCHELL, PARKER, HOLCOMB, MACKINTOSH, and TOLMAN, JJ., concur.

FULLERTON, J., dissents.