[No. 15087.   *En Banc.*   May 31, 1919.]

## NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*, v. BOARD OF COUNTY COMMISSIONERS ETC. OF YAKIMA COUNTY, *Respondents*.[1]

DRAINS (16-1)—ASSESSMENT—BENEFITS TO PROPERTY—APPORTIONMENT—RAILROAD RIGHT OF WAY. An assessment for an irrigation ditch against a railroad right of way is not upon a fundamentally wrong basis and arbitrarily excessive although it averages $235 per acre, while bordering farm lands were assessed at $15 per acre and county highways at about $90 per acre, where the assessments were arrived at by concluding that the total benefits were three times the total cost of the improvement, and farm lands were charged one-third of the increased market value, while railroad right of way and county highways were held to be benefited in a certain sum each, one-third of which was assessed against them, in lieu of attempting to determine the increased market value, upon the theory that it was impracticable to so measure benefits to such property; in view of the fact that the evidence tended to show that the ditch very materially contributed to the improved condition of the road-bed making it suitable for heavier traffic (CHADWICK, C. J., MAIN, MACKINTOSH, and MITCHELL, JJ., dissent).

SAME (18)—ASSESSMENTS—BENEFITS TO PROPERTY—REVIEW. There being, under Rem. Code, § 4226-30, no appeal from the decision of the county commissioners apportioning assessments upon the property in a drainage district benefited by the construction of an irrigation ditch, the decision being final, there is a stronger presumption sup-

[1]Reported in 181 Pac. 868.

porting the apportionment of benefits than in the cases of city local improvement assessments from which appeal may be taken to the courts.

Appeal from a judgment of the superior court for Yakima county, Holden, J., entered May 27, 1918, dismissing an action to restrain the collection of an assessment, after a trial on the merits. Affirmed.

*Geo. T. Reid, J. W. Quick, L. B. da Ponte,* and *C. A. Murray,* for appellant.

*W. B. Bridgman* and *E. B. Preble,* for respondents.

PARKER, J.—The plaintiff railway commenced this action in the superior court for Yakima county, seeking the cancellation, and enjoining the collection, of a special assessment tax levied upon six and one-half miles of the right of way of the Sunnyside division or branch line of its railway, situated in drainage district No. 2, of Yakima county, to aid in the payment of the cost of the construction of drains in that district; the railway company having tendered to the county treasurer a sum which it claims is sufficient to pay an assessment lawfully chargeable to it, measured by the benefits of the improvement to its right of way. Trial in that court resulted in judgment denying to the railway company the relief prayed for, from which it has appealed to this court.

The drainage district was duly organized under chapter 176, Laws of 1913, p. 611, which is also found in Rem. Code, § 4226-1 *et seq.* The total area of the district, including farm lands, town lots, county roads, and appellant's right of way, is approximately 7,800 acres. The total cost of the improvement was $153,193, which was assessed and apportioned against all of the lands within the district, of which $14,700 was assessed against the appellant's right of way consisting of ap-

proximately sixty-two acres. Appellant's railway and right of way lies along a draw, in an easterly and westerly direction, clear across the district, for a distance of approximately six miles, which draw forms the natural main drainage course of the district. Along this draw, at all points very near to appellant's railway, was constructed the main drainage ditch of this improvement, into which were run lateral ditches from higher ground to the north, which bring to the main ditch water which would by natural drainage reach the draw. Prior to the construction of this improvement, such natural drainage seriously injured the lower lands along and to the north of the draw, causing them to be wet and so impregnated with alkali as to render them unfit for farming. When this railway line was constructed, about the year 1905, and up until the construction of this improvement, the draw was wet, soft ground along practically the entire course of the railway through the district, the water interfering with the railway by the rendering of the roadbed soft and unsubstantial, suitable only for comparatively light and slow traffic. This portion of the railway was originally constructed only as a branch to the main transcontinental line of the company; but the roadbed along the draw was later so improved that it can be, and has to some considerable extent been, used for heavy main line traffic. The construction of this improvement, especially the construction of the main line ditch along and near to the railway, has, the evidence tends strongly to show, very materially contributed to the improved condition of the roadbed, and became a factor of some considerable moment in making the roadbed suitable for heavy main line traffic.

Some two miles to the north, and approximately parallel with this portion of the railway, and on

ground about one hundred feet higher, runs the main Sunnyside irrigation canal, carrying a large quantity of water. This canal was there and in use some years before the construction of the railway along this draw, which is the natural course of the drainage from the rising ground for several miles beyond and above, as well as below, the Sunnyside canal, which ground rises above the canal, and at a point several miles to the north at the summit of Rattlesnake ridge or mountain, attains a height of some fifteen hundred feet or more above the canal, all forming a watershed of some considerable proportions, naturally draining into the draw along which the railway runs. The whole of this region is more or less arid, and the water which this improvement was designed to carry off comes largely from seepage from the Sunnyside canal, though at certain seasons of the year there comes upon the lower lands and into the draw from natural causes a considerable quantity of other water. There have been occasions before the construction of this improvement when this water caused considerable damage to the lower lands and the railway, which the improvement renders practically certain will not occur in the future.

There is no controversy here over the regularity of the proceedings leading up to the making of the assessment to pay the cost of the improvement. The only contention here made in behalf of appellant railway company being that the assessment levied upon its right of way was measured and apportioned upon a fundamentally wrong basis, and is so clearly excessive as to show arbitrary action on the part of the assessing officers. The sixty-two acres of railway right of way being charged with $14,700 of the cost of the improvement, it will be noticed that such assess-

ment was at an average rate of about $235 per acre. The farm lands bordering upon appellant's right of way were assessed at an average rate of about $15 per acre, while other farm lands on ground a little higher were assessed at an average of about $20 per acre. Town lots were assessed somewhat higher in proportion to area than farm land, a few of them being assessed as high as $200 per acre. The assessment against Yakima county for the improvement of its highways by drainage within the district was approximately $90 per acre of the area of such highways.

The evidence produced upon the trial in the superior court, we think, warrants the conclusion that the assessing officers arrived at the amounts they charged against the several properties within the district, and measured the benefits resulting thereto from the construction of the improvement, substantially as follows: The assessing officers concluded from their investigations that the actual total benefits resulting from the improvement to all the lands and roads in the district was approximately three times the total cost of the improvement. They then charged against the farm lands and town lots the several amounts they concluded would equal one-third of the increased market value of such lands and lots resulting from the improvement. We note that they charged the lowest lands along the railway proportionately less per acre than those lying a little higher, for the reason that the lowest lands were impregnated with alkali to a greater extent than those a little higher, and were, therefore, less valuable, even though drained, than the higher lands; and also for the reason that the draining of the lowest lands constituted only a comparatively small part of the work of completely reclaiming them as agricultural lands, it being necessary to thereafter work the alkali out of them.

In determining the amounts to be charged against
the county highways and appellant's right of way, the
assessing officers concluded from their investigations
that the actual cost of an improvement of this nature,
in so far as it resulted in direct benefit to the county
highways and appellant's right of way, would be a
certain sum as to each, one-third of which they
charged to the county and the railway company, re-
spectively. They adopted this method of measuring of
the benefits to the county highways and to appellant's
right of way in lieu of attempting to determine the
increased market value thereof, upon the theory that
it was impractical to so measure benefits as to such
property. The assessing officers concluded from their
investigations that the improvement to appellant's
right of way was one which the owners of such prop-
erty, situated and menaced as it was for want of
proper drainage, would be reasonably expected to
make, and that to make such an improvement to the
extent of the portion thereof that this improvement
benefited appellant's right of way would have cost ap-
pellant approximately three times the amount assessed
against it.

The act of 1913, under which this drainage district
was created, the improvement constructed, and the
assessment levied to pay the cost thereof, does not
prescribe any rule or method for the measuring and
apportioning of the benefits to the several properties
within the district, the only requirement in that re-
spect being that found in section 25 of the act, that
the appraisers, whose duty it is to make and appor-
tion the assessments, after the determination of the
total cost of the improvement, "shall proceed to care-
fully examine the drainage system and the public and
private property within the district and fairly, justly

and equitably apportion the grand total cost of the improvement against the property and the county or counties, cities and towns within the district, in proportion to the benefits accruing thereto.'' Laws of 1913, p. 628; Rem. Code, § 4226-25. Section 29 (Id., § 4226-29) of the act expressly authorizes the assessing of railroads, as well as public highways and other property in the district, in proportion to the benefits accruing thereto from the improvement.

The contention that the assessment of appellant's right of way was made and apportioned by the assessing officers upon a fundamentally wrong basis is rested upon the theory that it was erroneous to measure the benefits resulting to appellant's right of way by taking into consideration the actual cost of the improvement, in so far as the portion thereof which benefited the right of way is concerned, and then charging one-third of such cost against the right of way. We are unable to see anything inequitable in this manner of arriving at the proportional benefits resulting to the right of way, in view of the fact that it was practically impossible to arrive at the proportional benefits resulting to the right of way by looking merely to the increased market value thereof resulting from the improvement, as was practical with reference to the farm lands and lots; the fact that the cost of that portion of the improvement directly benefiting the right of way could be approximately determined; and the fact that it was such an improvement as was reasonably necessary to the railway company in the light of existing conditions; all of which facts are not only to be presumed in aid of the conclusions of the assessing officers, but which conclusions we think are amply supported by the evidence produced upon the trial of the case in the superior court.

Counsel for appellant cite and rely upon our recent decision in *Oregon-Washington R. & Nav. Co. v. Board of Com'rs of Yakima County,* 103 Wash. 480, 175 Pac. 37. A critical reading of that decision will show that, in making the assessment there in question, "before proceeding to the levy, an arbitrary sum was agreed upon" by the assessing officers, "to be assessed against appellant;" that the assessing officers in assessing appellant's right of way took into consideration the fact "that the drainage will dry up and make the county roads in the vicinity more accessible so that the patrons of appellant's road may more conveniently patronize it;" and that these considerations on the part of the assessing officers caused them to materially increase the assessment they laid upon appellant's right of way. We think this record fails to show that any such considerations, or others of a similar import, were entertained by the assessing officers in making this assessment, in the sense that they were thereby influenced to add to the assessment against appellant's right of way.

Nor do we think that the evidence in this case shows, with that conclusiveness required in such cases to defeat assessments of this nature, that it warrants the court in holding that this assessment upon appellant's right of way was capriciously or arbitrarily made by the assessing officers without the exercise of honest judgment on their part, or that such assessment is excessive or inequitably apportioned as against appellant's right of way. The mere fact that the assessment against the right of way is higher than upon adjoining farm lands, when measured merely by the acre, we think is not at all controlling in this case, in view of the nature of the improvement and its comparative benefit to the right of way and the adjoining

farm lands.  Were it our duty to personally view and examine the improvement and apportion the benefits as an original proposition, it is possible we might arrive at a different conclusion from that of the assessing officers, and one more favorable to appellant. But that is not our province.  This is an original action in equity, the object of which is to set aside the assessment upon the ground, in its last analysis, of fraud.  Neither the superior court nor this court entertains this action as one upon appeal from the decision of the assessing officers.  The act provides, in § 30 (Id., § 4226-30) for a hearing upon the question of benefits and their apportionment, before the board of county commissioners, where objection by the owners to the assessments made by the appraisers shall be considered by the board, which, so far as the assessment proceeding is concerned, is the tribunal of final hearing upon the question of benefits and the apportionment thereof.  There is no appeal provided by this act from the decision of that board to the courts.  This leads us to remark that, therefore, this assessment comes to the courts with even stronger presumptions supporting the decision of that board as to the benefits and the apportionment thereof than in those cases of city local improvement assessments, as to which the statute expressly provides for an appeal to the courts from the decisions of city councils confirming such assessments.

We are of the opinion that, upon the showing made in this record, we would not be warranted in disturbing the judgment of the superior court denying to appellant railway company the relief it prays for.

The judgment is affirmed.

MOUNT, FULLERTON, TOLMAN, and HOLCOMB, JJ., concur.

MAIN, J. (dissenting)—In my opinion, this case is controlled by the case of the *Oregon-Washington R. & Nav. Co. v. Board of Com'rs of Yakima County,* 103 Wash. 480, 175 Pac. 37, and upon the authority of that case, the judgment should be reversed.

In that case, the railway company's right of way, figured as acreage, was assessed five times as much as the assessment of the adjoining property. It was there held that the assessment was upon a fundamentally wrong basis. In the present case, the railway company's right of way, figured as acreage, is assessed fourteen or fifteen times as much as the adjoining property.

It is true that, in the former case, the commissioners, prior to making the assessment, had in mind an arbitrary sum which was agreed upon to be assessed against the right of way, but the opinion is not rested upon this. It is stated therein that this fact would not avoid the assessment if it could be sustained in reason.

If the assessment in the former case, as there, held, was upon a fundamentally wrong basis, it necessarily follows that the assessment in this case is likewise objectionable for the same reason.

I therefore dissent.

CHADWICK, C. J., MACKINTOSH, and MITCHELL, JJ., concur with MAIN, J.