[No. 17045.  Department One.  February 24, 1922.]

THURSTON COUNTY *et al.*, *Relators*, v. C. W. CLAUSEN,
*as State Auditor*, *Respondent*.[1]

DRAINS (9)—ESTABLISHMENT—CONSOLIDATION OF DISTRICTS—RESO-
LUTION—DESCRIPTION OF LANDS INCLUDED. An order for the consoli-
dation of two drainage districts, made pursuant to Laws 1917, p.
518, § 3, is sufficient where it describes all of the territory included
in the original districts, although it does not exactly follow the ex-
terior boundaries of the original districts, due to the fact that the
inclusion of a quantity of acreage which had been incorporated in
each of the original districts made the following of the original
lines superfluous in describing the consolidated district.

SAME (11)—MODE AND PLAN OF CONSTRUCTION—HEARING. Under
Laws 1917, pp. 518, 519, §§ 5, 6, providing that all provisions of law
applicable to original drainage districts shall apply to a consolidated
district, and that the rights and powers of such districts shall be
possessed by the consolidated district, and that consolidation shall
not affect the indebtedness of original districts nor the liability of
the lands therein situated, there is no necessity for a public hearing
before the county board for the purpose of adopting plans for the
improvement of the consolidated district.

SAME (16-2)—ASSESSMENTS—PROCEEDINGS — ESTIMATES — COST OF
IMPROVEMENT. Under Laws 1917, p. 523, § 16, providing that esti-
mates of the cost of a proposed drainage improvement are "pre-
liminary only and shall not be binding as a limit on the amount
that may be expended in constructing such system," the fact that
the actual cost of the improvement by a consolidated district is
more than double the preliminary estimates made for the original
districts is immaterial, where no objections have been raised by
the landowners, and hence would not invalidate bonds issued to .
cover the cost.

SAME (5, 6)—ESTABLISHMENT—NOTICE OF HEARING—SUFFICIENCY.
The objection that landowners in a consolidated drainage district
have not had their day in court as to districts in which they were
not property owners is without merit, where ample notice by publi-
cation and by posting in three public places in each of the dis-
tricts was given, and the organization of each district, its plan for
improvements, the estimated cost and the amount of benefits were
all matters of public record.

[1]Reported in 204 Pac. 787.

SAME (32-2)—ASSESSMENTS—POWER TO LEVY—PROPERTY LIABLE. It is within the power of the legislature to authorize drainage districts to make improvements at the expense of the property specially benefited.

SAME (2)—ESTABLISHMENT — CONSOLIDATION OF DISTRICTS — PURPOSE. Under the power conferred on the board of county commissioners by Laws 1917, p. 517, § 1, to order the consolidation of drainage districts when it "will result in economy of the maintenance of such districts," the board is authorized to order the construction of improvements by and on behalf of a consolidated district by taking up the work of its predecessors in whatever stage it may be.

Application filed in the supreme court January 16, 1922, for a writ of mandamus to compel the state auditor to accept certain drainage district bonds and issue a warrant in payment therefor. Granted.

*William W. Manier* and *Roscoe R. Fullerton,* for relators.

*The Attorney General* and *Fred J. Cunningham, Assistant,* for respondent.

*Wm. B. Bridgman, amicus curiae.*

TOLMAN, J.—This is an original proceeding by relators for the purpose of requiring respondent, as state auditor, to accept certain drainage district bonds and issue a warrant in payment therefor. The petition sets forth, among other things, the steps regularly taken under ch. 176 of the Laws of 1913, p. 611, and subsequent amendments thereto, by which drainage district No. 2 of Thurston county was established in January, 1919, and drainage district No. 4 of Thurston county was established in April, 1920. The improvements contemplated in district No. 2 were the drainage of the land on either side of the southerly end of Black lake by deepening and straightening the channel of Black river, which is the natural outlet of the lake and flows from the southerly end of the lake, emptying into the Chehalis river; and in district No. 4 it was pro-

posed to drain lands on both sides of and lying north-easterly above the lake, by a ditch running north-easterly from the upper end of the lake to Percival creek, and thence into an arm of Puget Sound, near the city of Olympia. The boundaries of the two districts overlapped so that some 556 acres of land were in both districts, would presumably receive benefits from both districts, and be subject to assessments in both districts.

Prior to the organization of district No. 2, a report favorable to the proposed improvement had been made and filed by the county engineer, which included an itemized estimate of the cost of construction, amounting to $15,763.08. The county board, in October, 1919, by resolution adopted after hearing, as provided by law, ordered that the assessments levied upon the land benefited should be paid in ten annual installments; that temporary warrants should be issued to pay the costs of construction as the work progressed, and that, when the work was completed, bonds should be issued and sold to take up the warrants. The board of supervisors of the district assumed charge of the work and expended approximately $5,700 in its prosecution. In the meantime, upon a proper petition, due notice, and without objection, drainage district No. 4 was organized. The engineer's estimate of the cost of the work proposed to be done was fixed at $18,050. Supervisors were elected but no construction work was begun, no expense was incurred except for organization expenses, and no bonds were authorized or issued.

In May, 1920, the supervisors of both improvement districts joined in a written request to the board of county commissioners of Thurston county, asking for a consolidation of the two districts. Thereupon the county board passed a resolution declaring its intention to order a consolidation, fixed a date for a hearing,

caused notice to be properly given as the statute directs, and a hearing to be had at a time and place specified in the notice. · At such hearing there were no objections, and without opposition from any land-owner, the county board passed a resolution consolidating the two districts into a consolidated district to be known as "Consolidated Drainage Improvement District No. 101 of Thurston County," and fixed the boundaries of such consolidated district so as to include all of the land theretofore embraced in the two original districts, but did not describe it according to the boundaries of the two original districts, since to do so would have been, in terms, to include twice the 556 acres common to both districts by reason of the overlapping of their boundaries.

The board of supervisors of the consolidated district determined that the improvements contemplated by each of the original districts should be constructed and completed as one unit, and under the supervision of the county commissioners let a contract for the work as a whole, and thereafter the board of county commissioners duly provided that the costs of the improvement should be paid by the property owners in ten annual installments; that temporary warrants should be issued, and that when the work was completed bonds · of the consolidated district should be issued to cover the whole cost and take up the warrants; and still later an agreement was entered into between the county board and the state reclamation board (now the department of conservation and development) by which the state reclamation board agreed to purchase the bonds upon the completion of the work. No engineer's report or estimate was made or filed with the county board on behalf of the consolidated district, nor any public hearing had with reference to the improvement, other than the two reports made by the county engi-

neer with reference to the two original districts, and the hearings had thereon, prior to the consolidation. The work has since been completed under contract and accepted by the county engineer, the costs of the improvement have been apportioned by the board of appraisers and assessments based thereon levied against the property benefited, all without contest or objection by any one, and the proceedings leading up to the levying of the assessments have all been regular and based upon due notice as required by statute. Nor has any appeal been taken from the order confirming the assessments. The total cost of the completed improvement for the consolidated district was $80,613.19, including the $5,700 expended by district No. 2 before the consolidation. Bonds for this amount have been duly issued and tendered to respondent as state auditor, and payment thereof demanded; but respondent has refused to accept the bonds and issue warrants in payment, upon the advice of the *Attorney General.*

We gather from his brief and argument that the *Attorney General's* objections to the bonds are as follows:

(1) That the resolution of the county board establishing the consolidated district should have described it by the exterior boundaries of both the original districts, even though by such description some 556 acres of land would have been twice described, and, in fact, such description, when stripped of surplusage, would have embraced exactly what is embraced by the description which was adopted.

(2) That though the plans for the improvement contemplated by the separate and original districts were properly adopted, still, notwithstanding that fact, upon the organization of the consolidated district there should have been a public hearing before the

county board to adopt the plans for the improvement in the consolidated district.

(3) That the county engineer's estimates of the cost of the drainage improvement of the two original districts totaled $33,813.08, while the whole cost of the completed improvement of the consolidated district was $80,613.19; that notwithstanding that § 16, Ch. 130, of the Laws of 1917, p. 523, provides that such estimates are "preliminary only and shall not be binding as a limit on the amount that may be expended in constructing such system," yet such provision is unconstitutional when applied to the present case, in that the landowners in each of the original districts had no notice of the hearing for the establishment of the other district, and no opportunity to be heard as to the plan of improvements in the other district, and hence no opportunity to be heard upon the plan of improvement adopted for the consolidated district, which included the plans of both of the original districts; hence they have not had their day in court.

(4) That the resolution of the county board authorizing the improvement on behalf of the consolidated district and awarding the contract for the construction of the same is void, for the reason that the statute does not authorize the construction of improvements on behalf of consolidated districts, but authorizes the consolidation of improvement districts for maintenance purposes only.

We will briefly consider these objections in the order in which they have been set forth.

In § 3 of the amended act (Laws of 1917, p. 518), after providing for a hearing upon the application for consolidation and any objections thereto which may be interposed, the county board is authorized to refuse to proceed further with the consolidation, "or may enter an order declaring any two or more of such districts

consolidated, and that the territory included in such districts shall thereafter constitute and be known as 'Consolidated Drainage or Diking Improvement District No. —— of ——— County,' giving to such consolidated district its number. . . . ."

If the statute means what it says, and no reasons are advanced to cause us to think otherwise, then the only necessity is to so describe the consolidated district in the resolution as to cause it to include all of the territory included in the districts of which it is composed, and no more, and this can be done in any way or form which is definite and accurate. Since it is not contended that any of the territory of the two original districts has been omitted, or anything outside of that territory included, or that the description is in anywise indefinite or uncertain, we conclude that the description adopted by the county board was sufficient.

The second contention is as readily answered. Section 5 of the amended act (Laws of 1917, p. 518), in considerable detail, gives the board of supervisors of the consolidated district all of the rights and powers theretofore possessed by the supervisors of the original districts, provides that the indebtedness of the original districts and the liability of the lands situated therein shall not be affected by the consolidation, and § 6 (Laws of 1917, p. 519), reads:

"Whenever two or more districts have been consolidated all the provisions of law applicable to such districts prior to the consolidation shall apply to the consolidated district."

Hence, at whatever stage the consolidation takes place, it is plainly the legislative intent that there shall be no backward step taken. All that has been lawfully done remains legally binding and the consolidated district may go forward at once from the point where the original districts left off. It is not contended that

there was here any failure in this respect, or that every requirement of the statute has not been met, either before the consolidation by the original districts, or afterwards by the consolidated district.

The third objection is a somewhat more serious one. The combined estimates of the cost of the improvements in the two original districts made by the county engineer totaled less than $34,000, while the work as prosecuted after the consolidation cost more than $80,-000. It is not shown, however, that the original plans were in anywise changed or departed from, and the record wholly fails to explain the discrepancy between the estimates and the cost. Were the question properly raised by one owning land subject to the assessment it would merit careful study, but the property owners have stood by and seen the contract let and the work performed without any protest; have, after due notice, failed to file a single objection to the assessment roll, and have permitted the assessments against their property to become final. Nor are they, or any of them, appearing in this action or asking any relief whatever. Having thus permitted their property to become irrevocably bound, we can only conclude that they have received their money's worth and are satisfied, and, since the act provides "that such estimate of the cost shall be held to be preliminary only, and shall not be binding as a limit to the amount that may be expended in constructing such system", there is nothing to be considered except the point raised by the *Attorney General*, *i. e.*, that the property owners have not had their day in court.

This contention will not bear analysis. The owners of property within the confines of each of the original districts had due notice under the statute, it is conceded, of everything necessary at the time each

original district was organized and became finally and fully bound thereby, so that, had the original districts remained in being and carried out each its proposed plan, this question could not have been successfully raised. Being so bound, what effect had the consolidation upon them? It may be conceded that, if the consolidation had taken effect without notice to them, they would not have been bound thereby, but we find that the statute very fully and carefully provides that, when the petition for consolidation is presented to the county board, that body, if of the opinion that the proposed consolidation will result in economy of maintenance, shall, by resolution, declare an intention to order such consolidation, and shall fix a time and place for hearing objections thereto, which shall not be less than thirty nor more than sixty days thereafter, and notice of such hearing shall be given by publication for two successive weeks, and by posting in three public places in each of the districts affected. It being admitted that the statute was fully complied with, this would seem sufficient. The organization of each district, its plan for improvements, the estimate of the cost thereof, and the amount of benefits, and all other facts showing its status, were matters of public record, open to all; and with knowledge that the county board intended to order the consolidation unless objections were filed, it is inconceivable that the property owners would not inform themselves of the condition of the other district in which they had not theretofore been interested, unless, indeed, they were determined to trade "sight unseen", in which event, according to the universal custom, they would be entitled to no sympathy and no relief in any event. We are at a loss to see how the legislature could have more amply provided for a hearing upon the plan to be adopted

by the consolidated district, which, by virtue of the consolidation, comprised the plans of the several districts theretofore adopted. Nor can it be contended that the legislature exceeded its power in so providing: *Kuehl v. Edmonds,* 91 Wash. 195, 157 Pac. 850; *Foster v. Commissioners of Cowlitz County,* 100 Wash. 502, 171 Pac. 539.

The fourth and last objection has its source, we think, in the language of the statute (Laws of 1917, p. 517, § 1), which reads:

"Whenever it shall appear to the board of county commissioners that the consolidation of two or more diking or drainage improvement districts established under the provisions of chapter 176 of the Laws of 1913 and acts amendatory thereof will result in economy of the maintenance of such districts, they shall by resolution declare their intention to order such consolidation. . . ."

We find no other reason mentioned in the statute for consolidation save only "economy of the maintenance", as above stated, and have no hesitancy in holding that the intent of the legislature was to authorize consolidation for such purpose only; and presumably the consolidation here complained of was sought and obtained for that purpose only. But while authorized for the purpose of securing economy of the maintenance only, there is nothing in the statute which in anywise limits the time within which consolidation may be made. Presumably, in many cases, if not in all, when the plans of adjacent districts have been adopted, it can readily be determined from a study of the plans whether or not economy of maintenance can be effected by consolidation or otherwise, with substantially as much certainty as the same question can be determined after construction is fully completed. The very language of the statute contained in §§ 5 and

6 of the amended act, to which we have heretofore referred, indicates the legislative intent that the consolidation may take place at any time after the original districts have been organized (economy of maintenance having been determined), and nowhere in the statute do we find anything indicating a contrary intention. Hence, assuming, as we are bound to do from the record before us, that the consolidation in this case was sought and obtained for the purpose of effecting "economy of the maintenance", and the statute conferring full power upon the consolidated district to take up the work of its predecessors in whatever stage it may then be, we cannot hold that a resolution by the board of county commissioners authorizing the construction of the improvement by and on behalf of the consolidated district is other than a proper, legal and binding order under the conditions shown in this record.

The peremptory writ of mandate will issue as prayed for.

PARKER, C. J., FULLERTON, and BRIDGES, JJ., concur.